IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CALVIN BRADSHAW, #0095021　　　　　*
　　　　Plaintiff,
　　v.　　　　　　　　　　　　　　　*　CIVIL ACTION NO. AW-09-1594

MARTIN O'MALLEY, et al.　　　　　　*
　　　　Defendants.
　　　　　　　　　　　　　　　　　***

## **MEMORANDUM**

I.　*Background*

This 42 U.S.C. § 1983 Complaint for damages and injunctive relief was received for filing on June 17, 2009 by Plaintiff, who was at all relevant times confined in the Maryland Division of Correction.[1] Plaintiff sues some nineteen defendants, complaining that various state prison administrators and executives, mental health personnel, and private healthcare staff: (1) interfered with his receipt of medical supplies (artificial tears, ointment, and baby shampoo), and headache medication during the first five months of 2009; (2) denied him a single-cell, which was previous approved in 2005 for psychological reasons; (3) failed to provide him an adequate prescription regimen of Midrin for his migraine headaches; (4) on June 10, 2009, denied him Benadryl and Midrin medication and informed him that he was not to "get medication anymore"; and (5) erroneously dismissed or failed to respond to his administrative remedy grievances regarding the aforementioned issues.[2]

---

[1] Plaintiff was transferred to a Kansas Department of Corrections pursuant to the Interstate Corrections Compact during the pendency of this action.

[2] The Complaint was accompanied by documents from 2007-2009 involving Plaintiff's pharmacy records, sick-call encounter forms, administrative remedy grievances, and inmate recommendations regarding single-cell housing, along with copies of Maryland Division of Correction Directives. Paper No. 1 at Filed Separately Exhibits.

II.     *Dispositive Filings*

Defendants Tessema and Ottey, the served "medical defendants," have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, treated as a motion for summary judgment. Paper No. 24. Defendants Shearin, Northcraft, Graham, Oakley, Holeuage, O'Malley, Stouffer, Galley, Franklin, and Rouley also filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Paper No. 32. Plaintiff has filed an Opposition. Paper No. 34. The case is ready for the Court consideration.

III.    *Standard of Review*

The Supreme Court has established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173,(1976)). As an inmate sentenced to confinement, Plaintiff is entitled to receive reasonable treatment for serious medical needs. To establish a claim of an Eighth Amendment violation, he must prove two essential elements. First, he must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. at 105; *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). Plaintiff must then prove the subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Personnel "must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. A defendant cannot be held liable for medical treatment in which they played no role. Liability under § 1983 is predicated upon an affirmative link or connection between the defendants' actions and the claimed deprivations. *See Rizzo v. Goode,* 423 U.S. 362, 372-73 (1976). Further, the Eighth Amendment is not implicated by an inmate's complaint over the adequacy of the care he received when those claims amount to a disagreement over the appropriateness of the issuance of medication or medical devices. *See Veloz v. New York*, 339 F.Supp. 2d 505, 525 (S.D. N.Y. 2004).

Lastly, 42 U.S.C. § 1983 liability on the part of supervisory defendants, such as O'Malley, Maynard, Stouffer, Galley, Franklin, Rouley, Shearin, Graham, and Oakley, requires a showing that: "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (internal citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984) (supervisory liability for an inmate's beating by prison guards).

VI. *Analysis*

Plaintiff has a history of schizophrenia and a penetrating head injury from a stab wound occurring in February of 2004 which resulted in transection of his optic nerve, blindness of the right eye, and ptosis of the right eyelid.[3] His head injury also causes him to suffer migraine headaches. *See Bradshaw v. Maynard, et al.*, Civil Action No. AW-07-608 (D. Md.) and

---

[3] Ptosis refers to the sinking down of an organ. *See* Stedman's Medical Dictionary P. 1481, 27th Ed. 2000. In Plaintiff's case this involves the drooping of the upper eyelid. In most cases, it is caused by either a weakness of the levator muscle (muscle that raises the lid), or a problem with the nerve that sends messages to the muscle. *See* http://www.stlukeseye.com/conditions/Ptosis.asp.

*Bradshaw v. Rowley, et al.*, Civil Action No. AW-07-1270 (D. Md.). Exhibits in those cases show that tinted eyeglasses with "blinders" on each side were ordered for Plaintiff by UMMS personnel in 2006 and 2007, due to photosensitivity, and in 2004, Plaintiff received an MRI which showed a very small right temporal lobe arachnoid cyst.[4]

The court now turns to the recent history of Plaintiff's medical care and administrative remedies as set out in the records before the court.

## MEDICAL DEFENDANTS

### Medication for Eyes and Headaches

On January 5, 2009, Plaintiff filed a sick-call encounter form complaint of pain, redness, and vision changes to his eyes. That same day he received an artificial Tears ointment for his eye problems. The medical Defendants state that because of security concerns in Plaintiff's housing unit, medical staff was not permitted to administer the ointment to Plaintiff after January 5, 2009. Plaintiff also received his prescription for artificial Tears eye drops on February 21, 2009. Defendants contend that Plaintiff also had a prescription to receive baby shampoo to use twice daily to clean his eyelashes of dried secretions. He received one bottle of the shampoo on January 13, 2009. The prescription expired on February 5, 2009, but was renewed on March 18, 2009.

On March 31, 2009, Plaintiff submitted a sick-call request form for baby shampoo, AKWA tears and Artificial Tears ointment. He was evaluated on April 1, 2009 and otherwise had no complaints. His request was to be referred to the pharmacy. On April 10, 2009,

---

[4] Earlier case materials show that Plaintiff was monitored, evaluated, and treated for his various ailments by on- and off-site physicians. He was placed on a prescription regimen for his headaches which was periodically reviewed and altered as needed, he was evaluated at the University of Maryland Medical System ("UMMS") Neurology Clinic on several occasions, and he received an MRI in July of 2008, which showed no signs of an arachnoid cyst. As to his eye problems, Plaintiff was referred to and received consultations at the UMMS Ophthalmology Clinic and was given eye drops and ointment, safety glasses, consults with the on-site ophthalmologist and optometrist, and tinted prescription eyeglasses. *See Bradshaw v. Wirsching, et al*, Civil Action No. AW-09-01 (D. Md.).

however, Plaintiff was again seen by health care personnel and complained that he was not receiving his eye drops and baby shampoo. He was seen by a prison nurse the following day and voiced no complaints of vision changes. On April 24, 2009, Plaintiff was again seen and he reported no vision changes or complaints regarding his eye medication.

On May 8, 2009, Plaintiff was seen by Dr. Ottey. There is no record that he complained about his eye medication during this examination. On May 15, 2009, Plaintiff received another bottle of Artificial Tear eye drops. He was re-evaluated by Dr. Ottey on May 22, 2009, but there is no record that he complained about his eye medication during this evaluation. On June 25, 2009, the medical unit received a sick-call request form from Plaintiff complaining that his eyes were burning. Medical defendants state that there is no showing that they were ever informed of the request. They argue that there is no demonstration that Plaintiff complained about his not receiving eye drops or shampoo after June 25, 2009.

The Medical Defendants state that Plaintiff does have a prescription for Midrin to treat his headaches. Prior to May 9, 2009, he was to receive two capsules of Midrin at the onset of a headache and then one capsule every four hours as needed, up to a maxim of five capsules per day. Plaintiff received Midrin five times in January of 2009 and three times in March and April of 2009.

On May 8, 2009, Dr. Ottey evaluated Plaintiff in the Chronic Care Clinic. Plaintiff complained of continued headaches. Dr. Ottey modified Plaintiff's Midrin prescription to one capsule every four hours as needed, with no daily maximum of five capsules, in an effort to prevent headaches. On May 22, 2009, Ottey re-evaluated Plaintiff for his headaches. As a result of Plaintiff's comments that his frequent headaches were relieved by the Midrin, Ottey continued the dosage. On June 7, 8, and 12, 2009, Plaintiff received Midrin. On June 12, 2009, Ottey examined Plaintiff and changed his prescription to two capsules at the onset of a headache

5

and one capsule every four hours after that, as needed. Plaintiff received the Midrin on June 17, 2009, and four more times in July of 2009. On August 3 and 8, 2009, Plaintiff requested Midrin for a migraine headache, but according to the Medical Defendants he refused the medication.[5] On August 17, 2009, Plaintiff was transferred to a federal facility in Kansas

## STATE DEFENDANTS

The state Defendants assert that Plaintiff remained in a single cell during the time period in question or from June 24, 2008 until his transfer out of the Maryland Division of Correction on August 17, 2009. As to Plaintiff's administrative remedy grievances, Defendants state that most of the remedies involve medical complaints and have nothing to do with State prison employees. They argue that in most, if not all, of the cases, Plaintiff's medical grievances were investigated and responded to by administrators. The state Defendants otherwise adopt and incorporate by reference the medical record and affidavits filed by the medical Defendants.

## PLAINTIFF'S OPPOSITION

Plaintiff affirms that his Complaint is not about "the adequacy of the care [he] received or disagreement over the appropriateness of the issuance of medication, but [his] not receiving his medications at all." He contends that he filed sick-call encounter forms regarding his burning, painful, and blurry eyes, along with vision changes, migraine headaches and the failure to provide him his Midrin, "but to no avail." He claims that eyesight became worse and it did impair his daily activities.

## Findings

The court has examined the Complaint and all exhibits and affidavits presented in the responsive pleadings. The record shows that Plaintiff was monitored, evaluated, and treated for

---

[5] The Medical Administration Records ("MARs") from August of 2009 are not provided.

his various ailments by on-site physicians and nurses  He was placed on a prescription regimen for his headaches and eye condition which was periodically reviewed and altered as needed.

Plaintiff has failed to adequately refute Defendants' exhibits and the Affidavit of Dr. Ottey to demonstrate deliberate indifference to his serious medical needs.  While there may have been problems with the timing of and delays in the receipt of over-the-counter eye prescription regimen and his Midrin medication for his headaches, there is no evidence that the delays constituted a deliberate pattern or practice of the denial of medical care.  Finally, there is no allegation that the State defendants had any direct involvement in Plaintiff's medical treatment.  Plaintiff instead takes issue with the grievance decisions of prison administrators with regard to his medical complaints.   Prison staff are, however, entitled to rely on the judgment of health care professionals and it would appear in any event that Plaintiff's care with regard to his migraine and eye medication and treatments met constitutional standards.

V.  *Conclusion*

For the aforementioned reasons, Defendants' dispositive motions, construed as motions for summary judgment shall be granted.[6]  A separate Order follows.[7]

Date: May 10, 2010                                     /s/
                                              Alexander Williams, Jr.
                                              United States District Judge

---

[6] Given his transfer to the Kansas Department of Corrections, Plaintiff's request for injunctive relief has been rendered moot.

[7] In light of the failure to find an Eighth Amendment deprivation, the Complaint against Defendants Livers, Harris, Bishop, Phillips, Siracugamee, and Nurse Tammy shall be dismissed.